2UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
ARNOLD ROSENSHEIN d/b/a PARK WEST      :          15cv7397(DLC)
REALTY CO.,                            :
                      Plaintiff,       :          OPINION & ORDER
                                       :
          -v-                          :
                                       :
DAVID KUSHNER, JEFFREY MESHEL, WAYNE   :
STURMAN, PARADIGM CREDIT CORP.,        :
PARADIGM CAPITAL GROUP, LLC, PARADIGM  :
CAPITAL FUNDING, LLC., MERCURY CREDIT  :
CORP., MERCURY CAPITAL CORP. PARADIGM  :
MONROE CENTER III, LLC, PARADIGM       :
EXCHANGE LLC, EXCHANGE PARTNERS GROUP  :
LLC, PCF EXCHANGE LLC, PARADIGM        :
ELIZABETH LLC., PARADIGM EAST HANOVER  :
LLC, EAST HANOVER PARTNERS LLC,        :
TULIPAN INDURSKY & SONS LLC, and JOHN  :
DOES and ABC CORPS., said names being  :
fictitious,                            :
                      Defendants.      :
                                       :
-------------------------------------- X

APPEARANCES

For the plaintiff:
Michael Colin Barrows
Law Offices of Anthony A. Capetola
Two Hillside Avenue, Bldg. C
Williston Park, NY 11596

For the defendant Wayne Sturman:
Gerard A. Riso
Stein, Riso, Mantel, LLP
Chrysler Building
405 Lexington Avenue, 42nd Floor
New York, NY 10174

For the defendant Marc Gleitman:
David Edelberg
Nowell Amoroso Klein Bierman, P.A.
155 Polifly Road
Hackensack, NJ 07601

For the defendants Jeffrey Meshel, Paradigm Credit Corp.,
Mercury Credit Corp., John Does, ABC Corps., David Kushner,
Paradigm Capital Group, LLC, Paradigm Capital Funding, LLC,
Mercury Capital Corp., Paradigm Monroe Center IIII, LLC,
Paradigm Exchange LLC, Exchange Partners Group LLC, PCF Exchange
LLC, Paradigm Elizabeth LLC, Paradigm East Hanover LLC, East
Hanover Partners LLC, and Tulipan Indursky & Sons LLC:

Larry Hutcher
Michael Wexelbaum
Richard C. Wolter
Davidoff Hutcher & Citron LLP
605 Third Avenue
New York, NY 10158

DENISE COTE, District Judge:

     This case arises out of the 2008 financial crisis and the
collapse in the real estate market.  From roughly 2002 to 2008,
the plaintiff invested in real estate loans, which the
defendants claimed were conservative and subject to a low degree
of risk.  According to the plaintiff, these loans were, in
reality, highly risky.  By 2009, many of the loans had
experienced default.  Seeking federal court jurisdiction, the
plaintiff alleges that the defendants participated in a criminal
enterprise in violation of the Racketeer Influenced and Corrupt
Organizations Act ("RICO").  The defendants have filed two
motions to dismiss the first amended complaint ("FAC").  Because
the RICO claims are time-barred, the defendants' motions to
dismiss the RICO claims are granted.  The Court declines to

exercise supplemental jurisdiction over the remaining state law claims.

## Background

The following facts are taken from the FAC and documents attached to or integral to the plaintiff's claims.

### I.  Overview of the Parties

The plaintiff, Arnold Rosenshein ("Rosenshein"), is a real estate investor.  He engaged in investment transactions with the four individual defendants: David Kushner ("Kushner"), Jeffrey Meshel ("Meshel"), Wayne Sturman ("Sturman") and Marc Gleitman ("Gleitman," collectively the "Individual Defendants").  The Individual Defendants controlled various corporate entities (collectively, the "Corporate Defendants").  The Corporate Defendants include two categories: the Mercury entities (the "Mercury Defendants") and the Paradigm entities (the "Paradigm Defendants").

All of the Individual Defendants are alleged to have been principals, officers, members, and/or employees of the Mercury Defendants, which include Mercury Credit Corp. and Mercury Capital Corp.  Mercury Credit Corp. created loans secured by mortgages and other collateral, while Mercury Capital Corp. acted as the servicer for Mercury Credit Corp.'s loans.

3

In or around 2008, Kushner and Meshel left the Mercury Defendants and founded the Paradigm Defendants.  Sturman is also alleged to have worked with the Paradigm Defendants.  Paradigm Capital Group LLC solicited Rosenshein and others to invest in loans owned, originated, and serviced by the defendants.  Paradigm Capital Funding LLC received and disbursed funds on behalf of the other Corporate Defendants, and acted as a servicing agent for loans owned and originated by Paradigm Credit Corp.

## II.   Overview of the Loan Transactions

Rosenshein met Meshel in or around 2002 and the two developed a close relationship.  Meshel convinced Rosenshein to invest funds in commercial loans secured by real property and arranged by the Corporate Defendants.

As described by Rosenshein, his arrangement with the defendants was that he made significant investments in various loans, but had no control over how his funds would be utilized, and obtained no security interest or collateral in any of the mortgaged properties.  Meshel and Kushner falsely represented that the investments were conservative and would result in attractive returns with no risk of loss of principal because the value of the security exceeded the value of the loans.

According to Kushner and Meshel, in the event of a default on one of the loans, they would promptly foreclose on the collateral and Rosenshein would end up earning more money than if there had been no default.

## III.   Losses on the Transactions

By 2009, many of the loans in which Rosenshein invested had experienced defaults by the borrowers.[1]  When this happened, Kushner and Meshel assured Rosenshein that they would act promptly to foreclose on the collateral property, allowing them to pay off the loan in full, and possibly providing a windfall to Rosenshein.

In order to effectuate a delay in the foreclosure and sale of the properties, the defendants falsely represented that they had entered into contracts for sale of the collateral.  Kushner also gave Rosenshein various excuses, including blaming delays on borrowers, municipal regulators, brokers, and attorneys. Rosenshein alleges that the defendants failed to foreclose on the collateral properties in a timely fashion because they benefitted from a delay in foreclosure.  The defendants profited by executing extension, forbearance, and modification agreements

---

[1] Ten of the eleven loans at issue in this lawsuit experienced defaults by February 2009.

with borrowers after a default.  In one instance, the defendants received $100,000 from a borrower in exchange for an extension on their loan and the money was hidden from investors.  In addition, the defendants profited by keeping late fees collected from borrowers, even though those fees should have been paid to investors.  As a consequence of these delays, investors, including Rosenshein, incurred significant carrying costs.

## IV.  Specific Transactions

Rosenshein brings claims relating to eleven investments he entered into with the defendants.  These eleven investments share many characteristics.  In each, the defendants extended loans to borrowers for several million dollars, of which Rosenshein invested several hundred thousand dollars.  Each loan was secured by residential or commercial property.  Rosenshein invested in the loans between 2002 and 2008 and the loans each experienced defaults by the borrowers between 2003 and 2011, with defaults on ten of the eleven loans occurring by February 2009.  For purposes of illustration, two of the investments at issue are described in some detail here: the Bedford Place Investment and the East Haven Investment.

### A. The Bedford Place Investment

In or around September 2004, Rosenshein invested $250,000

6

in the Bedford Place Investment.  The loan, arranged by the defendants, had a purported total value of $3.5 million and was secured by mortgages on thirteen residential properties, as well as underground parking garages.

In 2005, the defendants entered into a loan extension agreement with the borrower in exchange for a fee of $70,000. The agreement also provided that the interest rate on the loan would increase from 11% to 12%.  In 2008, the borrower defaulted and the defendants commenced foreclosure proceedings.  Due to title issues, the foreclosure litigation has been ongoing since then, and the Rosenshein's capital continues to be tied up in the investment.  Rosenshein claims that the defendants would have known of the title issues had they exercised due diligence, and that they induced Rosenshein to invest in this loan by misrepresenting the risk involved with the investment.

B. **The East Haven Investment**

In or about 2008, Rosenshein invested $250,000 in the East Haven investment.  The loan was arranged by the defendants and had a total value of $5.3 million.  The defendants falsely represented that (1) the total value of the security was $10,850,000, (2) the LTV ratio[2] for the loan was 49%, (3) the

---

[2] The LTV ratio refers to the amount of the loan divided by the

loan was secured by three properties located in prime locations in Connecticut, and (4) one of the properties was being developed for multi-family use and another was being re-zoned for residential use.

The borrower defaulted in January 2009.  In November 2009, Rosenshein and other investors obtained ownership interests in one the properties through a deed in lieu of foreclosure.[3]  In September 2013, the third property was sold but no funds were distributed to Rosenshein.  The other two properties have not been sold.

c. **Overview of All Investments**

The following chart describes all eleven loans at issue in this case:

| Loan | Total Loan Value | Collateral | Rosenshein's Investment | Approximate Date of Rosenshein's Investment | Approximate Date of First Default | Approximate Date of Foreclosure |
|---|---|---|---|---|---|---|
| The Lordstown Investment | $1,500,000 | 2 properties in Ohio | $100,000 | May 2002 | 2003 | 2003 |
| The Bedford Place Investment | $3,500,000 | 13 residential properties in New York | $250,000 | September 2004 | 2008 | 2008 |

---

value of the collateral.

[3] The complaint does not specify which of the three properties the defendants received a deed to.

| The 24th Street Investment | Not alleged | Not alleged | $500,000 | 2008 | 2008[4] | October 2011 |
|---|---|---|---|---|---|---|
| The Tarpon Springs Investment | $2,350,000 | Residential property in Florida | $250,000 | February 2006 | January 2007 | 2008 |
| The Tern Landing Investment | $14,000,000 | Residential property in New Jersey | $500,000 | October 2006 | August 2008 | September 2009 |
| The Shabbat Investment | $7,500,000 | Two properties in New York | $500,000 | March 2007 | May 2008 | 2008 (forbearance agreement) Date of foreclosure not alleged |
| The D'Anconia Investment | $5,000,000 | Oceanfront property in the Virgin Islands | $250,000 | November 2007 | July 2011 | Not alleged |
| The Exchange Tarragon Investment | $12,000,000 | Real property located in Florida | $750,000 | November 2007 | January 2009 | January 2009 |
| The East Haven Investment | $5,300,000 | Three properties in Connecticut | $250,000 | 2008 | January 2009 | November 2009 (deed in lieu of foreclosure) |
| The East Hanover Investment | $12,300,000 | Property in New Jersey | $500,000 | March 2008 | February 2009 | 2009 |
| The Remsen Street Investment | $2,500,000 | Property in New York | $250,000 | January 2006 | February 2009 | March 2009 |

## V.  Procedural History

Rosenshein filed his original complaint on September 18,

2015.[5]  On December 3, all defendants except Sturman and Gleitman

---

[4] Although the date of default is not alleged in the FAC, a
letter attached to the complaint states that, as of October
2011, foreclosure proceedings had been ongoing for three years.

[5] Rosenshein filed a corrected complaint on September 22, 2015
due to a technical error in filing the first complaint on ECF.

filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6),
Fed. R. Civ. P.  Rosenshein filed the FAC on January 26, 2016.
On February 26, all defendants except Sturman and Gleitman filed
a motion to dismiss the FAC under Rules 12(b)(1) and 12(b)(6).
On February 26, Sturman filed his own motion to dismiss and
moved to strike certain paragraphs of the FAC as immaterial,
impertinent, and scandalous under Rule 12(f).  The motions
became fully submitted on April 29.[6]

## **Discussion**

When deciding a motion to dismiss under Rule 12(b), Fed. R.
Civ. P., a court must "accept all allegations in the complaint
as true and draw all inferences in the non-moving party's
favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d
471, 475 (2d Cir. 2009).  In deciding a motion to dismiss, the
court considers "any written instrument attached to the
complaint as an exhibit or any statements or documents
incorporated in it by reference."  Stratte-McClure v. Morgan
Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (citation omitted).
The court also considers "documents upon which the complaint

---

[6] On May 3, Gleitman filed a motion to dismiss.  By Order of May
6, the Court denied the motion as untimely but deemed Gleitman
to have joined in the arguments of the other defendants who
filed timely motions to dismiss.

relies and which are integral to the complaint." <u>Subaru</u>
<u>Distribs. Corp. v. Subaru of Am., Inc.</u>, 425 F.3d 119, 122 (2d
Cir. 2005).

"To survive a motion to dismiss under Rule 12(b)(6), a
complaint must allege sufficient facts which, taken as true,
state a plausible claim for relief." <u>Keiler v. Harlequin</u>
<u>Enters. Ltd.</u>, 751 F.3d 64, 68 (2d Cir. 2014); <u>Ashcroft v. Iqbal</u>,
556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient
factual matter, accepted as true, to state a claim for relief
that is plausible on its face."). "A claim has facial
plausibility when the plaintiff pleads factual content that
allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Parkcentral</u>
<u>Global Hub Ltd. v. Porsche Auto. Holdings SE</u>, 763 F.3d 198, 208
(2d Cir. 2014) (citation omitted).  Because the predicate acts
alleged by Rosenshein are mail and wire fraud, those allegations
must satisfy the heightened pleading standards in Federal Rule
of Civil Procedure 9(b).  <u>Lundy v. Catholic Health Sys. of Long</u>
<u>Island Inc.</u>, 711 F.3d 106, 119 (2d Cir. 2013).

## I.   Statute of Limitations for RICO Claims

Rosenshein's RICO claims are barred by the applicable
statute of limitations.  RICO claims are subject to a four-year

11

statute of limitations.  Koch v. Christie's Int'l PLC, 699 F.3d
141, 148 (2d Cir. 2012).  As described below, Rosenshein's RICO
claim accrued no later than 2009, or about six years before he
filed this lawsuit.  Although the statute of limitations is an
affirmative defense, it may be decided in a motion to dismiss
when the defense appears on the face of the complaint.  Ellul v.
Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir.
2014).

     A RICO claim accrues when a plaintiff discovers, or through
reasonable inquiry should have discovered, his injury, and does
not await discovery of the pattern of racketeering activity.
Rotella v. Wood, 528 U.S. 549, 553, 559 (2000) (rejecting a
pattern-discovery rule in favor of an injury-discovery rule);
see also In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56,
59 (2d Cir. 1998).  A plaintiff is on inquiry notice of his
injury when there are sufficient "storm warnings" such that "the
circumstances would suggest to an investor of ordinary
intelligence the probability that [he or] she has been
defrauded."  Koch, 699 F.3d at 151 (citation omitted).  "The
triggering information need not detail every aspect of the
subsequently alleged fraudulent scheme."  Cohen v. S.A.C.
Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013) (citation

omitted).  Once storm warnings arise and a plaintiff does not
make an inquiry within the four-year limitations period, the
claim is time barred.  Koch, 699 F.3d at 153.

Rosenshein's alleged injuries all stem from losses incurred
from his investments in eleven loans.  Rosenshein alleges that
his injuries include "loss of investment principal and interest,
his share of diverted proceeds, lost interest on the loans,
[and] lost opportunity cost."  Rosenshein alleges that these
injuries were proximately caused by the defendants'
misrepresentations concerning the quality and risk of the loans,
and their follow-up communications regarding the investments.
Rosenshein sustained his RICO injuries, therefore, at the time
he entered into those loans.  See Merrill Lynch, 154 F.3d at 59
("[T]he investors sustained recoverable out-of-pocket losses
when they invested; namely, the difference between the value of
the security they were promised and the one they received which
could not meet those objectives.").[7]  As set forth in the chart

---

[7] The Court in Merrill Lynch noted that a RICO injury occurs at
the time of investment when an investor does not, at a later
time, have legal remedies available that could "assuage the
injury."  Merrill Lynch, 154 F.3d at 59 (contrasting a situation
where, at the time of investment, the injury would be
speculative because the investor had contractual or other legal
remedies that could eliminate or significantly reduce an
injury).  According to the FAC, Rosenshein's purported injury
was not speculative at the time of investment because Rosenshein

above, Rosenshein invested in the various loans between 2002 and
2008.

Rosenshein's RICO claims accrued as early as 2003, but no
later than 2009.  Starting in 2003 and continuing through 2009,
most of the investments at issue experienced defaults by the
borrower(s), resulting in economic losses to Rosenshein.
Indeed, by the end of 2009, borrowers in ten of the eleven loans
had defaulted, affecting over $3.8 million of Rosenshein's
investment.  According to the FAC, Rosenshein was aware of these
defaults because the defendants attempted to reassure him that
his investments were safe despite the growing number of defaults
by borrowers.  These assurances notwithstanding, the fact that
numerous borrowers had defaulted would have caused a reasonable
investor to suspect the possibility of fraud and to make further
inquiries into the accuracy of the defendants' representations
regarding the collateral for and risk associated with the loans.
This is especially true given the fact that the defaults were
occurring during the 2008 financial crisis.  By the end of 2009,
a reasonable investor would have suspected that the defendants

---

alleges that he lost all control over the funds he invested with
the defendants and that he had no security interest in the
collateral for the loans.  For that reason, the alternative
envisioned in Merrill Lynch is applicable here.

had misrepresented the degree of risk associated with the
investments in real property and would have made further inquiry
into the validity of those representations.

Another round of storm warnings occurred after the
defendants foreclosed on the properties securing the loans, but
failed to sell those properties and promptly repay Rosenshein's
investment.  By the end of 2009, the defendants had foreclosed
on or obtained title to nine of the eleven properties.
According to their representations, the defendants should have
been able to sell these properties easily for amounts in excess
of the loans, and quickly repay all of Rosenshein's investment.
Instead, the defendants "gave [Rosenshein] various excuses,
blaming sundry circumstances and others, including, but not
limited to, borrowers, municipal regulators, brokers and
attorneys."  When the defendants failed to sell the collateral
properties and promptly repay Rosenshein, these developments
constituted further storm warnings that would make a reasonable
investor suspect fraud.  Given these storm warnings, a
reasonable investor would have suspected fraud by the end of
2009, at the latest.  Rosenshein's RICO claims, therefore, have
been time-barred since at least the end of 2013.

Rosenshein's arguments to the contrary are without merit.

15

First, he relies on the fact that the Second Circuit has adopted a separate accrual rule in which each new RICO injury begins a separate limitations period.  See Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1104 (2d Cir. 1988) ("[E]ach time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury.").  Rosenshein argues that he did not learn about the loss of certain portions of his investment until 2011, and therefore a new injury accrued triggering a limitations period starting at that time.  This argument conflates the time when Rosenshein's injuries occurred with the time when sufficient storm warnings existed to put him on inquiry notice of his injuries.  As already discussed, Rosenshein's injuries occurred when he was fraudulently induced to enter into investments that were riskier than he had been led to believe by the defendants.  See Merrill Lynch, 154 F.3d at 59.  Rosenshein entered into all of the loans at issue by 2008.  When his investments experienced defaults, delays in foreclosure proceedings, and problems with the sale of collateral, these events constituted storm warnings of his already-existing injury, not new independent injuries.[8]

---

[8] The foreclosures could not, as Rosenshein contends, be new

16

Moreover, <u>Bankers Trust</u> is distinguishable.  In that case the defendants initiated multiple frivolous lawsuits against the plaintiff in an attempt to prevent or dissuade the plaintiff from collecting a valid debt.  The Second Circuit held that each new lawsuit was a distinct injury.  <u>Bankers Trust</u>, 859 F.2d at 1105.  But, it has also held that, "non-independent injuries will not cause a new limitations period to accrue."  <u>Bingham v. Zolt</u>, 66 F.3d 553, 560 (2d Cir. 1995).  Here, Rosenshein has not alleged that he suffered new injuries in 2011, but rather that effects of the injury he sustained from his fraudulently-induced investments continued to be disclosed as late as 2011.  This argument fails, however, because although the storms warnings continued to occur as late as 2011, there had already been sufficient storm warnings by 2009, at the latest, to put Rosenshein on inquiry notice of his injuries.

---

independent RICO injuries.  To plead a RICO claim, a plaintiff must establish that the defendants' misconduct is both the "but for" and the proximate cause of his injuries.  <u>Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP</u>, 806 F.3d 71, 87 (2d Cir. 2015).  Rosenshein has not alleged that the defaults by non-party borrowers were part of the alleged RICO enterprise.  For that reason, the defendants are not alleged to have proximately caused the defaults, but rather to have induced Rosenshein into entering investments that were riskier than advertised.  The defaults, therefore, constitute storm warnings of the defendants' prior fraud, not new independent RICO injuries.

Second, Rosenshein argues that the burden of establishing that the RICO claims are time-barred is on the defendants, and that the defendants have not come forward with affirmative evidence showing the absence of a triable fact regarding the validity of their statute of limitation defense.  In considering a statute of limitations defense in the context of a motion to dismiss, a court must accept the allegations in the complaint as true, and will dismiss on that basis only if the defense is established by those allegations.  Ellul, 774 F.3d at 798 n.12. Here, the statute of limitations defense is established by Rosenshein's own allegations in the FAC, in which he alleges facts constituting sufficient storm warnings to put him on inquiry notice of his injuries by the end of 2009, at the latest.

Similarly, Rosenshein argues that the determination of when he had sufficient storm warnings to put him on inquiry notice of his injuries is a fact-intensive inquiry that cannot be decided on a motion to dismiss.  The Second Circuit has held, however, that "the question of inquiry notice need not be left to a finder of fact." Merrill Lynch, 154 F.3d at 60.  In a RICO case, the Court may determine as a matter of law whether sufficient storm warnings existed such that a reasonable

18

investor would suspect fraud.  See e.g., Koch, 699 F.3d at 153 (affirming district court's determination, on a motion to dismiss, that a reasonably diligent investor would have suspected fraud); Merrill Lynch, 154 F.3d at 60 (same).  For the reasons already discussed, Rosenshein was on inquiry notice of his injuries by the end of 2009 at the latest, and thus, his RICO claims are untimely as a matter of law.  Because Rosenshein's RICO claims are untimely, the Court need not address defendants' remaining arguments directed at Rosenshein's RICO claims.

## II.  **Leave to Amend RICO Claims**

Rosenshein seeks leave to amend his pleadings for the second time in the event that the Court finds that his "RICO claims require further development."  Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and instructs that "[t]he court should freely give leave when justice so requires." "[I]t is within the sound discretion of the district court to grant or deny leave to amend." Green v. Mattingly, 585 F.3d 97, 104 (2d Cir. 2009) (citation omitted).  A motion for leave to amend may be denied for "good reason, including futility, bad faith, undue delay, or undue

prejudice to the opposing party." <u>Holmes v. Grubman</u>, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted).  In particular, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." <u>Lucente v. Int'l Bus. Mach. Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted).

Rosenshein's request to amend is denied.  Rosenshein has already amended his complaint once in response to the defendants' prior motions to dismiss.  He does not explain how a further amendment would be productive, identify what additional facts he would like to add, or supply a proposed amended pleading.  Moreover, Rosenshein's RICO claims are time-barred as a matter of law and Rosenshein has made no showing that any amendment could cure that defect.

## III.  Supplemental Jurisdiction

The remainder of Rosenshein's claims arise under state statutory or common law.  Although the Court has supplemental jurisdiction over these claims, it may, in its discretion, decline to exercise such jurisdiction where it has "dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c).  In general, when all of a plaintiff's federal claims are dismissed before trial, the state law claims should be

dismissed as well.  First Capital Asset Mgmt., Inc. v.

Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004).

> It is well to recall that in the usual case in which
> all federal-law claims are eliminated before trial,
> the balance of factors to be considered under the
> pendant jurisdiction doctrine -— judicial economy,
> convenience, fairness, and comity -— will point toward
> declining to exercise jurisdiction over the remaining
> state-law claims.

Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med.

Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d

705, 727 (2d Cir. 2013).  Because all of the federal claims are

dismissed and because this action is still in its early stages,

the Court declines to exercise supplemental jurisdiction over

the state law claims.

**IV.  Sturman's Motion to Strike Portions of the Amended Complaint**

Sturman has moved to strike paragraphs 29 and 30 of the

FAC.  Those paragraphs allege, inter alia, that (1) Sturman was

convicted and incarcerated for the felony charge of making false

statements to financial institutions, (2) Sturman had been

subject to involuntary bankruptcy proceedings, and (3) Sturman

deprived his sister of her inheritance.  With respect to the

latter two allegations, the FAC quotes a prior judicial opinion

in In re Sturman, 222 B.R. 694, 696 (Bankr. S.D.N.Y. 1998).

Under Federal Rule of Civil Procedure 12(f), the Court "may

21

strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Second Circuit has observed that "courts should not tamper with the pleadings unless there is a strong reason for so doing." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976). "The function of a 12(f) motion to strike" has been seen as "avoiding the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." VNB Realty, Inc. v. Bank of Am. Corp., No. 11cv6805 (DLC), 2013 WL 5179197, at *2 (S.D.N.Y. Sept. 16, 2013) (citation omitted). There has arisen a general rule that motions to strike under Rule 12(f) "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." Id. at *3 (citation omitted).

Rule 12(f) does not require that the allegations in paragraphs 29 and 30 of the FAC be stricken. Striking the paragraphs would not avoid unnecessary expense or delay because all of Rosenshein's claims are dismissed. But, even if the case were proceeding, the allegations would not be stricken. They relate to past misconduct by Sturman and thus have a connection

to Rosenshein's RICO and state law fraud claims.  Finally, while the allegations paint Sturman in a negative light, some are already part of the public record in a prior proceeding and none is sufficiently scandalous to require striking under Rule 12(f). Accordingly, Sturman's motion to strike is denied.

## Conclusion

The defendants' February 26 motions to dismiss are granted. Rosenshein's RICO claims are dismissed with prejudice. Rosenshein's state law claims are dismissed without prejudice to him refiling them in state court.  Sturman's motion to strike is denied.  The Clerk of Court shall enter judgment for the defendants on the RICO claims and close the case.

Dated:    New York, New York
          August 26, 2016

_____
          DENISE COTE
    United States District Judge

23